# In the United States District Court for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| BRANDON WALKER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MORGAN & MORGAN, JACKSONVILLE PLLC a/k/a Morgan & Morgan, Jacksonville LLC and BRAD MILKWICK,<br><br>    Defendants. | CV 224—088 |

## ORDER

Before the Court is a motion to compel arbitration filed by Defendants Morgan & Morgan, Jacksonville PLLC's ("Morgan & Morgan") and Brad Milkwick. Dkt. No. 8. The motion has been fully briefed and is ripe for review. See Dkt. Nos. 19, 22, 28, 30.

## BACKGROUND

After being injured in a motor vehicle accident while working as a sheriff's deputy in McIntosh County, Georgia, Plaintiff Brandon Walker entered into a representation agreement with the law firm of Morgan & Morgan to represent his interests regarding the accident. Dkt. No. 1-1 ¶¶ 9, 11; Id. at 20. When Plaintiff contacted Morgan & Morgan, he was told his case would be handled out of the Brunswick, Georgia, office. Id. ¶ 12.

However, Plaintiff was also told that Defendant Brad Milkwick in the Savannah, Georgia, office would handle his worker's compensation claim. Id. ¶ 14. Defendant Milkwick did not file a worker's compensation notice, which led to Plaintiff's group health insurance carrier paying Plaintiff's medical bills from the accident. Id. ¶¶ 15, 16. The group health insurance carrier asserted a right for subrogation reimbursement of the claims paid, and Morgan & Morgan paid the reimbursement of $17,318.78 out of the $25,000.00 Plaintiff received from the at-fault driver's insurance company. Id. ¶¶ 16, 20; Id. at 33. Plaintiff further claims Morgan & Morgan exposed him to hundreds of thousands of dollars in future medical bills. Id. ¶ 17. Plaintiff also asserts that Morgan & Morgan failed to explore other possible sources of compensation for Plaintiff's injuries. Id. ¶ 19.

Plaintiff filed this lawsuit, a putative class action, against Morgan & Morgan and Mr. Milkwick on June 20, 2024. Id. at 3. In the complaint, Plaintiff asserts that, at the time Plaintiff retained Morgan & Morgan to represent him, the firm "was not qualified or registered to do business in Georgia in violation of O.C.G.A. § 14-11-711," and, "[t]herefore, the collection of any fees and expenses contemplated in the unenforceable fee contract was wrongful, and Plaintiff is entitled to the return of such money taken by [Morgan & Morgan]." Id. ¶ 21. Plaintiff brings claims against Morgan

2

& Morgan and Mr. Milkwick for professional negligence (Count I), breach of fiduciary duty (Count II), disgorgement of fees (Count III), declaratory and injunctive relief (Count III),[1] punitive damages (Count IV), and attorney's fees and costs of litigation (Count V).  Id. at 14-17.

In response to Plaintiff's complaint, Defendants filed a motion to compel arbitration and to dismiss or stay the litigation.  Dkt. No. 8.  Defendants note that Plaintiff and Defendants entered into a representation agreement wherein Plaintiff "agreed to arbitrate 'any and all disputes' arising out of or relating to his relationship with Defendants."  Id. at 1.  The representation agreement, titled "Authority to Represent," contains the following arbitration clause:

> By executing this fee agreement I agree that, with one exception, any and all disputes between me and the Firm arising out of this Agreement, The Firm's relationship with me or The Firm's performance of any past, current or future legal services, whether those services are subject of this particular engagement letter or otherwise, will be resolved through a binding arbitration proceeding to be conducted under the auspices of the Commercial Arbitration Rules of the American Arbitration Association in Georgia.  The disputes subject to binding arbitration will include without limitation, disputes regarding attorneys' fees, or costs and those alleging negligence, malpractice, breach of fiduciary duty, fraud or any claim based upon a statute. Both the agreement of the parties to arbitrate all disputes and the results and awards rendered through the arbitration will be final and binding on The Firm and me and may be specifically enforced by legal proceedings.  Arbitration will be the sole means of resolving such disputes, and both

---

[1] The complaint contains two causes of action labeled "Count III."

3

parties waive their rights to resolve disputes by court proceedings or any other means. The parties have agreed that judgment may be entered on the award of any court of competent jurisdiction in the state of Georgia and, therefore, any award rendered shall be binding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. The one exception to my agreement to arbitrate concerns ethical grievances which I may have. Nothing in this agreement limits, in any way, my right to pursue any ethical grievance against The Firm as permitted by applicable law.

I understand that by agreeing to arbitration as a mechanism to resolve all potential controversies, disputes, or claims between us, I am waiving certain rights, including the right to bring an action in court, the right to a jury trial, the right to broad discovery, and the right to an appeal. I understand that in the context of arbitration, a case is decided by an arbitrator (one or more), not by a judge or a jury. I agree that, in the event of such controversy, dispute, or claims between us, the prevailing party will be entitled to recover from the losing party all costs and expenses he, she, or it incurs in bringing and prosecuting, or defending, the arbitration, including reasonable attorneys' fees and costs.

I have been advised to review this letter carefully to be certain that it accurately sets forth our agreement. In the event that I do not understand anything in this letter, I will let The Firm know so further written explanations can be provided.

**NOTICE: I am aware that this agreement contains provisions requiring arbitration of fee disputes. I am aware that I should consult with another lawyer about the advisability of making any agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration, I give up (waive) my right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

Dkt. No. 1-1 at 57-58. Plaintiff e-signed the Agreement on July 19, 2022. Id. at 58; Dkt. No. 19 at 4. Defendants argue that "[e]ach of the claims in the Complaint are covered by the specific language of [Plaintiff's] arbitration agreement in the Representation Agreement." Dkt. No. 8 at 6. Plaintiff responds that the agreement to arbitrate is against public policy, unconscionable and unenforceable. Dkt. No. 19 at 3.

## LEGAL AUTHORITY

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy favoring arbitration agreements." Mason v. Midland Funding LLC, 815 F. App'x 320, 323 (11th Cir. 2020) (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)). "The FAA creates a 'presumption of arbitrability,' and under it, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Id. (quoting Dasher v. RBC Bank (USA), 745 F.3d 1111, 1115 (11th Cir. 2014)). "The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). Courts are therefore required to enforce arbitration agreements "according to their terms." Id. at 67. "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S 681, 687 (1996)). The party resisting

5

arbitration ultimately bears the burden of showing that the arbitration provision in question should not be enforced. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).

## DISCUSSION

### I. Enforceability of the Representation Agreement

#### a. Morgan & Morgan's Failure to Register to Do Business in Georgia

In the complaint, Plaintiff argues the representation agreement as a whole is unenforceable because Morgan & Morgan was not registered to do business in Georgia at the time the parties entered into the agreement. Dkt. No. 1-1 ¶ 21. To the extent Plaintiff argues the *arbitration provision* of the representation agreement is unenforceable, he is mistaken. The Court looks to O.C.G.A. § 14-11-711, the Georgia[2] statute governing the transaction of business by a foreign limited liability company that fails to register to do business in the state. The statute provides that "[t]he failure of a foreign limited liability company to procure a certificate of authority does not impair the *validity of any contract* or act of the foreign limited liability company or prevent the foreign limited liability company from defending any action, suit, or proceeding in any court of this state." § 14-11-711(b) (emphasis added). Because arbitration is a matter of contract, the arbitration

---

[2] The parties do not dispute that Georgia law applies.

agreement cannot be deemed unenforceable simply because Morgan & Morgan failed to register to do business in Georgia at the time the parties entered into the agreement.

### b. Other Terms of the Representation Agreement

Next, Plaintiff argues that provisions of the representation agreement *outside* of the arbitration clause are rather self-serving on the part of Morgan & Morgan.[3] Dkt. No. 19 at 4. Plaintiff's contention is irrelevant. "'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (quoting 9 U.S.C. § 2). In other words, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Id. at 70. "'As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" Id. at 70-71 (quoting Buckeye Check Cashing, Inc.

---

[3] Plaintiff identifies that Morgan & Morgan "secured for itself certain benefits, including 1) a fee interest in Plaintiff's claims; 2) authorization for Morgan and Morgan to publish the results of its representation for use in its own advertising; [] 3) an agreement that allows the law firm to withdraw its employment if Plaintiff rejected a settlement offer it recommends, and 4) to receive a fee based on the rejected settlement offer." Dkt. No. 19 at 4.

v. Cardegna, 546 U.S. 440, 445 (2006)). Therefore, Plaintiff's criticism of Defendants' fee interest, for example, and other provisions of the Agreement outside of the arbitration provision does not affect the arbitration provision's enforceability.

## II. Enforceability of the Arbitration Provision

### a. Public Policy

To the extent Plaintiff argues the arbitration agreement is void as against public policy, see dkt. no. 19 at 3, dkt. no. 28 at 1-2, that argument has already been rejected by the Georgia Supreme Court.

"[A] contract is void as against public policy not because the *process* of entering the contract was improper and objectionable by one party or the other, but rather because the *resulting agreement* itself is illegal and normally unenforceable by either party." Innovative Images, LLC v. Summerville, 848 S.E.2d 75, 81 (Ga. 2020). "[B]inding arbitration agreements generally are not in contravention of the public policy of [Georgia]. To the contrary, '[i]n enacting the Georgia Arbitration Code, the General Assembly established "a clear public policy in favor of arbitration."'" Id. (alteration not adopted) (quoting Order Homes v. Iverson, 685 S.E.2d 304, 307 (Ga. Ct. App. 2009)). "There is nothing about attorney-client contracts in general that takes them outside this policy and makes mandatory arbitration of disputes arising under them illegal. In fact, the [Georgia] State Bar, with the approval of

8

th[e] [Georgia Supreme] Court, long ago established a program for the arbitration of fee disputes between attorneys and clients." Id. "Nor are attorney-client agreements mandating arbitration of prospective legal malpractice claims categorically against public policy in Georgia." Id. "'[M]andatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law.'" Id. at 82 n.6 (quoting ABA Formal Opinion 02-425). Plaintiff makes no argument that the arbitration provision insulates Defendants from liability or limits the liability to which they would otherwise be exposed. Therefore, the arbitration agreement is not unenforceable as against public policy.

### b. Unconscionability

Plaintiff next argues the arbitration agreement is unconscionable. Dkt. No. 19 at 3. The Georgia Court of Appeals "has defined an unconscionable contract as one that '"no sane man not acting under a delusion would make and that no honest man would take advantage of,"' one that is '"abhorrent to good morals and conscience,"' and '"one where one of the parties takes a fraudulent advantage of another."'" Innovative Images, 848 S.E.2d at 83 (quoting NEC Tech., Inc. v. Nelson, 478 S.E.2d 769, 772 n.2 (Ga. 1996)). "We examine unconscionability from the perspective of *substantive* unconscionability, which 'looks

9

to the contractual terms themselves,' and *procedural* unconscionability, which considers the 'process of making the contract.'" Id. (quoting NEC Tech., Inc., 478 S.E.2d at 771).

### i. Procedural Unconscionability

With regard to procedural unconscionability, Plaintiff argues the lack of informed (or counseled) consent makes the arbitration agreement unenforceable. Dkt. No. 19 at 7. Plaintiff states in the complaint that he did not speak with any attorney prior to signing the arbitration agreement. Dkt. No. 1-1 at 2. Plaintiff argues "[h]ere, a law firm with a national presence had a client sign a fee contract that contained an arbitration provision without any explanation to the client as to what this meant or how it impacted the client's rights and remedies." Dkt. No. 19 at 4.

Attached to Plaintiff's opposition brief is an affidavit of Timothy Terrell, a professor *emeritus* at Emory Law School, who "concludes that the arbitration provision is unconscionable because the 'client is unsophisticated in legal matters generally, and specifically dealing with personal injury litigation' and the 'contract is surrounded by circumstances that make [it] hypocritical[], misleading [], and ultimately only to the benefit of the lawyer while victimizing the client.'" Id. at 5 (quoting Dkt. No. 19-4 at 5). As for Plaintiff's lack of sophistication, Plaintiff asserts he "is a layman without any legal expertise or training." Id. at 6

(citing Dkt. No. 1-1 at 30-33, Plaintiff's affidavit). Further, Plaintiff argues that, at the time he entered into the agreement, he "was in a vulnerable state recovering from painful personal injuries." Id. at 7.

"[W]here, like other contracts, a binding arbitration agreement is bargained for and signed by the parties, it is the complaining party that bears the burden of proving that it was essentially defrauded in entering the agreement." Innovative Images, 848 S.E.2d at 83. Here, Plaintiff has not met that burden. There is no evidence in the record that Defendants took fraudulent advantage of Plaintiff by including the arbitration provision in the agreement. Indeed, the agreement alerts Plaintiff, in bold print, of the agreement to arbitrate:

> **NOTICE: I am aware that this agreement contains provisions requiring arbitration of fee disputes. I am aware that I should consult with another lawyer about the advisability of making any agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration, I give up (waive) my right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

Dkt. No. 1-1 at 56. The agreement also states, "In the event that I do not understand anything in this letter, I will let The Firm know so further written explanations can be provided." Id. Further, though Plaintiff states he is an unsophisticated client, there is no record evidence of same. Plaintiff points the Court to his affidavit, which loosely describes his

11

unfamiliarity with workers compensation claims. Dkt. No. 1-1 at 30-32. The affidavit says nothing about Plaintiff's familiarity with contracts, arbitration or the legal process. See id. "[I]n any event, '"lack of sophistication or economic disadvantage of one attacking arbitration will not amount to unconscionability"' without more." Innovative Images, 848 S.E.2d at 84 (quoting Saturna v. Bickley Constr. Co., 555 S.E.2d 825, 827 (Ga. Ct. App. 2001)). Accordingly, Plaintiff has not proven that the arbitration provision is procedurally unconscionable.

### ii. Substantive Unconscionability

The Court now determines whether the arbitration provision is substantively unconscionable. Plaintiff argues that Defendants violated the Georgia Rules of Professional Conduct and the fiduciary relationship between an attorney and client by "forcing [Plaintiff] to agree to mandatory arbitration." Dkt. No. 28 at 2; see also Dkt. No. 19 at 5. Plaintiff further argues "[t]he violation of these fiduciary duties and rules of professional conduct are the abhorrent, conscience-shocking behavior the doctrine of unconscionability seeks to weed out of contracts." Dkt. No. 28 at 4.

Plaintiff's argument is unpersuasive. Plaintiff attacks the arbitration provision as a whole rather than the contractual terms themselves. As discussed *supra*, "[t]here is nothing about attorney-client contracts in general that . . . makes mandatory

arbitration of disputes arising under them illegal." Innovative Images, 848 S.E.2d at 81. Further, "the mere existence of an arbitration clause does not amount to unconscionability." Id. at 84 (quoting Saturna, 555 S.E.2d at 827). As the Georgia Supreme Court found in Innovative Clinical, the Court "cannot say that no sane client would enter a contract that mandated arbitration of future legal malpractice claims and no honest lawyer would take advantage of such a provision." Id. at 83.

Relatedly, Plaintiff argues that "Morgan & Morgan has attempted to enforce an identical arbitration provision in a Georgia state court and failed." Dkt. No. 19 at 4. Defendants respond that Plaintiff's characterization of the state court case is misleading. Specifically, Defendants say "the state trial court noted, *but did not expressly rule upon* the plaintiff's unconscionability defense" but rather "erroneously held that there was a 'preliminary factual inquiry' as to the *identities of the parties* to the agreement." Dkt. No. 22 at 11 n.6 (emphasis added) (citing Brown v. Morgan & Morgan Jacksonville, PLLC, No. STCV23-01276 (Chatham Cnty. State Ct. Nov. 29, 2023) (appeal pending)). Because Plaintiff does not refute Defendants' argument that the state court did not rule upon the unconscionability of the arbitration provision, see dkt. no. 28, the Court finds Plaintiff has abandoned this ground for unenforceability of the arbitration agreement. Hunt v. United States, No. 5:12cv370, 2014 WL 7530783, at *5 n.6 (M.D.

13

Fla. Nov. 13, 2014). The Court finds Plaintiff has not met his burden to show that the arbitration provision is substantively unconscionable. Accordingly, the Court concludes that the arbitration provision at issue is enforceable. Defendants' motion to compel, dkt. no. 8, is therefore **GRANTED.**

### III. Scope and Arbitrability

The scope of the arbitration provision is broad, as it applies to "any and all disputes between [Plaintiff] and [Morgan & Morgan] arising out of th[e] Agreement." Dkt. No. 1-1 at 57. Plaintiff argues, however, that his claims—professional negligence, breach of fiduciary duty, and disgorgement of fees— are ethical complaints and thus "explicitly exempt" from arbitration. Dkt. No. 19 at 8. Indeed, the arbitration provision specifically excludes "ethical grievances" from its scope: "Nothing in this agreement limits, in any way, [Plaintiff's] right to pursue any ethical grievance against [Morgan & Morgan] as permitted by applicable law." Dkt. No. 1-1 at 57.

The Court need not determine whether Plaintiff's claims fall within the scope of the arbitration provision. The arbitration provision expressly invokes the Commercial Arbitration Rules of the American Arbitration Association. Id. The Court takes judicial notice of those rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to

14

the existence, *scope*, or validity of the arbitration agreement or to the *arbitrability of any claim* or counterclaim." Commercial Arbitration Rules & Mediation Procedures, Am. Arb. Ass'n (Oct. 1, 2013), R-7(a) (emphasis added), available at https://adr.org/sites/default/files/Commercial%20Rules.pdf. The Court is required to enforce the arbitration agreement "according to [its] terms," Rent-A-Center, 561 U.S. at 67, and here, the parties agreed that an arbitrator would determine issues of scope.

## CONCLUSION

Defendants' motion to compel arbitration, dkt. no. 8, is **GRANTED**. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the completion of the alternative dispute resolution process.

**SO ORDERED**, this 9th day of October, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

15